UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

COREY R. CAPEHART,

      Petitioner,

v.                                                          Case No.  4:17cv68-RH-CJK

JULIE JONES,

      Respondent.

_____/

<u>REPORT AND RECOMMENDATION</u>

      Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254, with supporting memorandum.  (Docs. 1, 2).  Respondent filed an answer, providing relevant portions of the state court record.  (Doc. 21).  Petitioner did not reply although invited to do so.  (*See* Doc. 22).  The matter is referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that petitioner is not entitled to habeas relief.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

On September 26, 2011, petitioner was charged in Leon County Circuit Court Case No. 2011-CF-2533, with four crimes: armed burglary of a structure with intent to commit an assault or battery therein (Count 1, a first-degree felony punishable by life), sexual battery (Count 2, a second-degree felony), simple battery (Count 3, a misdemeanor), and violation of a condition of pretrial release in a pending domestic violence case (Count 4, a misdemeanor).  (Doc. 21, Ex. C1, p. 10).[1]  The victim of the crimes was the victim in the domestic violence case.  (*Id*.).

On July 11, 2012, petitioner resolved the charges, pursuant to a counseled, negotiated plea agreement, by pleading no contest to stipulated amended charges of witness tampering (Count 1), misdemeanor battery (Count 2) and criminal mischief (Count 3), with an adjudication of guilt and a total sentence of 11 months and 29 days' imprisonment in the county jail (with credit for 324 days' time served) followed by 3 years on probation, no contact with the victim, and completion of the Batterer's Intervention Program or county equivalent.[2]  The State nolle prossed

---

[1] References to exhibits are those provided at Doc. 21.  Where a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom right corner of the page.

[2] The foregoing was petitioner's sentence for the witness tampering.  Petitioner's sentence for each remaining offense (battery and criminal mischief) was 11 months and 29 days' imprisonment in county jail to run concurrent with each other and with the witness tampering sentence.

Count 4.  (Ex. C1, pp. 39-40 (plea agreement); Ex. D3, pp. 159-73 (plea and sentencing transcript)).  The trial court confirmed the State's amendment of the charges, conducted a plea colloquy, accepted the parties' stipulated factual basis for the plea, determined petitioner's plea was knowing and voluntary, accepted the plea and sentenced petitioner consistent with the plea agreement.  (Ex. D3, pp. 159-73; Ex. C1, pp. 44-52 (judgment), pp. 53-60 (order of probation)).   Judgment was rendered July 11, 2012.  (*Id.*).  Petitioner did not directly appeal from the judgment.

Less than one year later, on May 28, 2013, petitioner was charged with violating his probation.  (Ex. C1, pp. 61-64 (violation report), pp. 65-67 (supporting affidavit), pp. 69-71 (arrest/probable cause affidavit)).  Petitioner obtained appointed counsel, executed a written admission to the violation, and entered an open plea to the court.  (Ex. C1, pp. 73-74 (written admission), pp. 107-27 (VOP plea hearing transcript)).   The court accepted petitioner's admission, found him guilty of the probation violation, revoked his probation, and set the matter for sentencing.  (Ex. C1, pp. 107-27).   Following a sentencing hearing where the court considered evidence from petitioner and the State, the court sentenced petitioner to 7 years' imprisonment followed by 18 years on probation with no early termination.  (Ex. C1, p. 98 (order revoking probation); pp. 128-38 (sentencing transcript); Ex. C2 (evidence submitted at sentencing hearing); Ex. C1, pp. 81-90 (VOP judgment), pp.

91-97 (new order of probation)).  Petitioner appealed, represented by counsel.  (Ex. C4).  The First DCA affirmed on October 13, 2014.  *Capehart v. State*, 148 So. 3d 169 (Fla. 1st DCA 2014) (copy at Ex. C7).

On June 11, 2014, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. D1, pp. 1-13).  The state circuit court held an evidentiary hearing and denied relief by written order.  (Ex. D1, pp. 24-106 (evidentiary hearing transcript), pp. 19-21 (order)).  The First DCA affirmed per curiam without opinion.  *Capehart v. State*, 197 So. 3d 557 (Fla. 1st DCA 2016) (Table) (copy at Ex. D7).  The mandate issued September 14, 2016.  (Ex. D10).

On February 24, 2016, petitioner filed a *pro se* petition for writ of habeas corpus alleging ineffective assistance of appellate counsel.  (Ex. E1).  On November 2, 2016, the First DCA denied the petition, except it struck the trial court's oral pronouncement prohibiting early termination of probation.  *Capehart v. State*, 202 So. 3d 958 (Fla. 1st DCA 2016) (copy at Ex. E4).

Petitioner filed his federal habeas petition on January 30, 2017.  (Doc. 1).  Petitioner claims his no contest plea to witness tampering was involuntary due to trial counsel's affirmative misadvice on two matters: (1) the offense level and maximum possible penalty for the witness tampering and (2) the viability of a

defense that attacked the victim's credibility with prior inconsistent statements and Facebook posts. Respondent asserts petitioner is not entitled to relief because his first claim fails to meet 28 U.S.C. § 2254(d)'s demanding standard and his second claim is procedurally defaulted. (Doc. 21).

## SECTION 2254 STANDARD OF REVIEW

Federal courts are precluded from granting a habeas petition on a claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's factual determinations are presumed correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[3] Justice O'Connor described the appropriate test:

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *Woods v. Donald*, 575 U.S. —, —, 135 S. Ct. 1372, 1376 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

---

II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases.  *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). The Supreme Court described the "unreasonable application" standard this way:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86 (2011)). The § 2254(d) standard "is difficult to meet . . . because it was meant to be." *Richter*, 562 U.S. at 102.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of

the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, 576 U.S. —, —, 135 S. Ct. 2269, 2277 (2015) (quotation marks omitted).

Only if the federal habeas court finds that the petitioner satisfied § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

DISCUSSION

Ground One          "Defendant's plea was involuntary and thus invalid because it
                    was based on affirmative misadvice by his trial counsel."  (Doc.
                    1, p. 3; Doc. 2, pp. 4-6).

Petitioner alleges the following to support this claim:

> The Petitioner, Mr. Capehart asserts that his counsel told him that
> he was charged with and would be pleading to tampering with a witness
> (i.e., the alleged victim).  Counsel misled him to believe that this was a
> first degree felony regardless of the degree of the original charge which
> the witness would be testifying.

> Counsel led him to believe that he would be pleading to
> tampering with a witness concerning a simple battery charge and not
> the other charges.  However, after Mr. Capehart violated his probation
> and came to prison, he learned that tampering of a witness is only a
> third degree felony when the original charge is a simple battery.  He
> asserts that had he known this **fact** when he entered his plea on July
> 11th, 2012, he would **not** have entered the plea and insisted on a  jury
> trial.

(Doc. 2, p. 4) (emphasis in original).  The parties agree that petitioner presented this

claim to the state courts in his Rule 3.850 proceeding; that the state circuit court

denied relief on the merits; that petitioner appealed the issue; and that the First DCA

summarily affirmed without explanation.  (Doc. 1, pp. 4-5; Doc. 21, pp. 6-7; 18-19).

The First DCA's summary affirmance is an "adjudication on the merits" entitled to

deference under 28 U.S.C. § 2254(d).  *See Richter*, 562 U.S. at 100 ("This Court

now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

A.    Clearly Established Federal Law

    i.    Guilty Plea Challenges

The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 36-37 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). "Once a plea of guilty [or no contest] has been entered, nonjurisdictional challenges to the conviction's constitutionality are waived, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Scott v. Wainwright*, 698 F.2d 427, 429 (11th Cir. 1983); *Lefkowitz v. Newsome*, 420 U.S. 283, 288 (1975) ("[T]he general rule is that a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings.").

This waiver includes claims of ineffective assistance of counsel "except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000); *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970) (holding that the assistance of counsel received by a defendant is relevant to the question of whether the defendant's guilty plea was

Top

knowing and intelligent insofar as it affects the defendant's knowledge and understanding).  The Supreme Court elaborated in *Tollett v. Henderson*, 411 U.S. 258 (1973):

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

*Id.* at 267.

The advantages of entering a plea may only be secured "if dispositions by guilty plea are accorded a great measure of finality."  *Blackledge v. Allison*, 431 U.S. 63, 71 (1977).  Recognizing that a prisoner often "has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea", courts accord great deference to a defendant's statements during a plea colloquy and are reluctant to allow a defendant to go behind his own sworn testimony.  *Id.*

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Id.* at 73-74 (citations omitted). "The plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases not only where witnesses and evidence have disappeared, but also in cases where witnesses and evidence were not presented in the first place." *Premo v. Moore*, 562 U.S. 115, 132 (2011).

ii.    Ineffective Assistance of Counsel Claims

The two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to claims that counsel was ineffective during the plea process. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (applying *Strickland*'s two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel). The petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Trial

counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.   The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different result.  *See Strickland*, 466 U.S. at 694.  A reasonable probability is one that sufficiently undermines confidence in the outcome.  *Id.*  "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *See Strickland*, 466 U.S. at 698.  "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  "Establishing that a state court's application of *Strickland* was unreasonable

under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105.  As the Court in

*Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both
> "highly deferential," and when the two apply in tandem, review is
> "doubly" so.  The *Strickland* standard is a general one, so the range of
> reasonable applications is substantial.  Federal habeas courts must
> guard against the danger of equating unreasonableness under *Strickland*
> with unreasonableness under § 2254(d).  When § 2254(d) applies, the
> question is not whether counsel's actions were reasonable.  The
> question is whether there is any reasonable argument that counsel
> satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

**B.    Section 2254 Review of State Court's Decision**

Petitioner raised this ineffective assistance claim as Ground One of his Rule

3.850 motion.  (Ex. D1, pp. 7, 9 (missing page 8); Ex. E2A at "Exhibit H" p. 8

(complete copy of Rule 3.850 motion)).  The state circuit court held an evidentiary

hearing and denied relief by written order.  (Ex. D1, pp. 24-106 (evidentiary hearing

transcript); Ex. D1, pp. 19-21 (order)).  The written order stated:

> The Defendant was charged in this case with Burglary of a
> Structure While Armed; Sexual Battery; Battery and Violation of
> Pretrial Release Conditions.  The Defendant's attorney, John Kelly
> negotiated a plea deal with Assistant State Attorney Christie Utt.  Under
> the plea agreement negotiated by Mr. Kelly, Mr. Capehart agreed to
> change his plea to no contest to amended charges of Witness
> Tampering, Battery and Criminal Mischief.  Under the terms of the plea
> agreement the Defendant would receive a sentence of 11 months and
> 29 days in Leon County Jail followed by three years of probation.  The

Defendant was entitled to credit of time served of 324 days which meant that with the gain time accumulated the plea was a time served plea followed by probation.

Until the date of plea hearing, Mr. Kelley was not aware that under the provisions of Florida Statutes, Chapter 914.22(e), the Tampering charge carried a potential maximum sentence of up to life in prison because the charge of Burglary of a Structure While Armed, a first degree felony punishable by life, was the charge under which the witness tampering occurred.   Once he became aware of the requirements of the law Mr. Kelly fully discussed with Mr. Capehart the fact that if the plea agreement was accepted, Mr. Capehart would be entering a plea to a charge that carried a potential for a life sentence if he violated the terms of his probation.  The evidence presented at the hearing on February 6, 201[5] clearly demonstrates that Mr. Capehart, as well as his aunt, who also testified were aware of the terms of the plea agreement and accepted the terms of the plea agreement and waived the right to a trial in return for the negotiated time-served plea.

The trial judge who accepted the Defendant's change of plea was Judge Dawn Caloca-Johnson.  To decide this motion, I have reviewed the transcript of Judge Caloca-Johnson's July 12, 2012 plea hearing.  I have reviewed the court file including the Defendant's motion and the response by the State.   In addition, I have heard and carefully considered the testimony presented by the parties at this hearing.

For the reasons stated on the record at the hearing on February 6, 201[5], I find no merit in the Defendant's claim for relief.

(Ex. D1, pp. 19-20).  The reasons stated on the record at the February 6, 2015,

evidentiary hearing were these:

THE COURT:  . . . [I]t is abundantly clear from everyone that you were completely aware of the terms of the plea agreement and the consequences of entering into the plea agreement and you did that freely and voluntarily.  You now have buyer's remorse because you

violated the terms of your probation. But that doesn't give you any legal grounds to set aside the plea negotiations and the plea that you readily and voluntarily accepted because you felt like that it was in your best interest at that time. You can't go back now and say well, since I violated my terms of my probation, I want to have it to do all over again.

(Ex. D1, p. 101). The First DCA affirmed without explanation. (Ex. D7).

Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, federal habeas courts employ the following "look through" presumption: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, — U.S. —, 138 S. Ct. 1188, 1192 (2018). Looking to the state circuit court's decision, this court must defer to the state court's factual findings, including its implicit credibility determination favoring trial counsel Mr. Kelly's testimony, because the findings are amply supported by the record and petitioner has not shown by clear and convincing evidence that they are incorrect. *See Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review.").

The written plea form petitioner executed identified the maximum penalty for the witness tampering charge as "LIFE". (Ex. C1, p. 39). At petitioner's plea

hearing, trial counsel Mr. Kelly explained to the court the terms of petitioner's plea, including the nature of the tampering charge and its maximum penalty:

> MR. KELLY:  Pursuant to an offer from the State, Mr. Capehart wishes to withdraw any previously entered pleas and plead no contest to the following three counts.
>
> Count 1, witness tampering which, as we've just been discussing, due to the nature of the crime for which Mr. Capehart was charged, at the time of the alleged witness tampering actually is a life felony. . . .

(Ex. D3, p. 160).  The trial judge confirmed with the attorneys that the penalty range for the witness tampering charge was "[m]inimum lowest permissible sentence would be 13.8 months . . . [u]p to a maximum of life".  (Ex. D3, p. 162).  Addressing petitioner, the judge confirmed: "Mr. Capehart, you've heard what your attorney has announced.  That you desire to withdraw your not guilty plea and enter a plea of no contest to one count of witness tampering which has a maximum penalty of life.  Count 2, battery, which has a maximum penalty of one year and one count of criminal mischief, again with a maximum penalty of one year."  (*Id*., pp. 162-63).  After placing petitioner under oath, the judge conducted a thorough plea colloquy with petitioner.  (*Id*., pp. 163-69).  The colloquy elaborated on the witness tampering charge:

> THE COURT:  All right.  And you all help me out here.  The docket doesn't have a tampering with witness charge.  How did that come about?

MS. UTT [Prosecutor]:  It – it came about because through jail calls and various letters he tried to get the – and did at one point actually get the victim to change her story.  So it was primarily – and he sent letters to the victim using an alias name and had her come to the jail seeing alias other defendants, passing messages back and forth trying to get her – and, again, she did ultimately go back and forth about what happened as a result of his tampering.

THE COURT:  Okay.  And at some point that was charged?

MS. UTT:  It was not – it was not charged.  As a negotiation, as a plea in lieu of charging the –

THE COURT:  Okay.

MS. UTT:  – burglary, we charged the tampering.

THE COURT:  Okay.  And Mr. Kelly, does the defendant agree to the State's recitation of the reason we have a tampering with a witness charge?

MR. KELLY:  Yes.

THE DEFENDANT:  Yes, Ma'am.

MR. KELLY:  He knows what it's about.

. . . .

THE COURT:  All right.  And we've reviewed the maximum sentence which the most serious one is the tampering with a witness which could subject you to a life – a sentence of life in prison.  Do you understand that if I place you on probation, which I'm going to do when I accept your plea, that if you violate the terms of your probation [–] and you need to review that paperwork when you get it very carefully, if you violate the terms of your probation that you could be sentenced to, if

you're found to have violated, up to life in prison, Sir.  Do you
understand that?

THE DEFENDANT:  Yes, Ma'am.

(Ex. D3, pp. 165-67).   Petitioner's trial counsel later re-confirmed, through

testimony at the postconviction evidentiary hearing, that prior to petitioner's entry

of his plea, he discussed with petitioner, and petitioner acknowledged his

understanding, that because the witness tampering involved the investigation and

prosecution of the armed burglary with attempt to commit assault or battery – a life

felony – the witness tampering was a life felony.  (Ex. D1, pp. 43-44, 50-52); *see

also* Fla. Stat. § 914.22(2)(e).

Given this record, the state court's rejection of petitioner's claim was neither

contrary to, nor an unreasonable application of the *Strickland* standard.  Petitioner is

not entitled to habeas relief on Ground One.

Ground Two         "Defendant's plea was involuntary and thus invalid because it
                   was based on affirmative misadvice by his trial counsel."  (Doc.
                   1, p. 5; Doc. 2, pp. 6-7).

Petitioner alleges:

Counsel rendered ineffective assistance by misadvising
Petitioner that the Facebook posts where the alleged victim admitted
lying at his first appearance hearing were not important and proved
nothing when in fact the evidence actually proved that Ms. Minor [the
victim] continued to harass the Petitioner and even threatened to lie at
his trial if he decided to go forward with a jury trial.

(Doc. 1, p. 5). Petitioner elaborates in his supporting memorandum that "had his trial counsel not told him that it did not matter that the victim had changed her original statements[,] he would not have entered the plea and insisted on going to trial." (Doc. 2, p. 6). Petitioner asserts he presented this claim to the state courts in his Rule 3.850 proceeding. (Doc. 1, p. 6). Respondent asserts a procedural default defense, arguing that petitioner abandoned this issue in his postconviction appeal and therefore deprived the state court of one full opportunity to resolve the claim. (Doc. 21, pp. 5-6, 7-10). Respondent alternatively argues the merits. (*Id.*, pp. 34-40).

Before bringing a habeas action in federal court, a state prisoner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted)). The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard*, 404 U.S. at 277-78.

A federal claim is subject to procedural default where the petitioner failed to properly exhaust the claim in state court and it is obvious the unexhausted claim would now be barred under state procedural rules. *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999). In Florida, when a defendant receives an evidentiary hearing on his Rule 3.850 postconviction motion, he is required to file an appellate brief. *See* Fla. R. App. P. 9.141(b)(3). Failure to address an issue in the initial brief constitutes a waiver or abandonment of that issue, and renders it procedurally defaulted for purposes of federal habeas review. *See Atwater v. Crosby*, 451 F.3d 799, 810 (11th Cir. 2006) (holding that federal habeas petitioner, who received an evidentiary hearing on his Rule 3.850 motion, procedurally defaulted his ineffective assistance claim when he failed to argue it in his initial brief on appeal from the denial order). A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Petitioner raised this ineffective assistance claim as Ground Two of his Rule 3.850 motion. (Ex. D1, p. 9). The state circuit court denied relief on the merits after conducting an evidentiary hearing. Petitioner filed a *pro se* initial brief on appeal,

but did not raise the issue of counsel's alleged misadvice concerning the viability of an impeachment-based defense. Petitioner argued only the merits of Ground One – counsel's advice on the offense level and corresponding maximum penalty for the witness tampering charge. (Ex. D4). Thus, petitioner failed to properly exhaust Ground Two in state court. *See Atwater*, 451 F.3d at 810. Petitioner's unexhausted claim is now procedurally defaulted because he cannot return to state court to exhaust it in a Rule 3.850 proceeding, as such a motion would be successive. *See Atwater* at 810; *see also Christopher v. State*, 489 So. 2d 22, 24-25 (Fla. 1986) (holding that a Florida court may summarily dismiss claims raised in a successive motion for postconviction relief that were, or could have been, raised in a prior Rule 3.850 motion); Fla. R. Crim. P. 3.850(h); *see also, e.g., Rightmire v. Florida, Sec'y Dep't of Corr.*, No. 17-10947-D, 2017 WL 3923327, at *1 (11th Cir. May 15, 2017) (unpublished opinion) (holding that six of petitioner's habeas claims were procedurally defaulted because he failed to raise them in his *pro se* brief on appeal from the denial of postconviction relief after an evidentiary hearing). Petitioner makes none of the requisite showings to excuse his procedural default. Petitioner's procedural default bars federal habeas review of Ground Two.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  *Miller-El*, 537 U.S. at 336 (*quoting* 28 U.S.C. § 2253(c)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774 (2017) (*quoting Miller-El*, 537 U.S. at 327).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and*

that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604, 146 L. Ed. 2d 542 (2000) (emphasis added). The petitioner here cannot make the requisite showing.  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a).  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Corey R. Capehart*, Leon County Circuit Court Case No. 2011-CF-2533, be DENIED.

2.  That the clerk be directed to close the file.

3.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 19th day of November, 2018.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.